IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CASE NO. 7:20-CV-00219-M

JOHN H. PIKE and IMMACOLATA )
PIKE, )
 )
                Plaintiffs, )
 ) **ORDER**
v. )
 )
WELLS FARGO BANK, N.A. *et al.*, )
 )
                Defendants. )

Plaintiffs filed suit to recoup damages stemming from Defendants' alleged failure to inform Plaintiffs that the home they purchased with debt partially refinanced by Defendants was located in a flood zone. This matter is before the court on two motions filed by Defendants: the Motion to Dismiss [DE-13] and the Motion to Strike Plaintiffs' Surreply [DE-35].

I.      Factual and Procedural Background

As alleged in the Complaint, in 2005 Plaintiffs secured two mortgage loans from Bank of America to finance the purchase of land and construction of a home in Hampstead, North Carolina. Compl. ¶¶ 6-7, DE-1-1. In November 2007, Plaintiffs secured a mortgage from Defendants' predecessor bank, Wachovia. *Id.* ¶¶ 8-9. Wachovia represented to Plaintiffs that it would obtain an accurate assessment of whether or not the home was located in a flood zone necessitating flood insurance, a requirement for federally funded lending institutions. *Id.* ¶¶ 10, 12. Wachovia informed Plaintiffs that the home was not located in a "Special Flood Hazard Area" ("SFHA") and therefore did not require flood insurance. *Id.* ¶ 11. This information was inaccurate; at all relevant times, Plaintiffs' property was in fact located in a SFHA. *Id.* ¶ 14.[1]

---

[1] The court notices the fact that Plaintiffs did maintain flood insurance on the property pursuant to Bank of America's ("BOA") requirement; they subsequently allowed that insurance to lapse in mid-2008 when they were later advised

When Hurricane Florence struck southeastern North Carolina in September 2018, it caused torrential rain and catastrophic flooding. *Id.* ¶ 15. The Plaintiffs' home was "inundated up to its roof, causing it to be a complete loss." *Id.* It was only when the Plaintiffs sought assistance in the aftermath of the hurricane that they learned their home was in a designated flood zone. *Id.* ¶ 16. Defendants were informed of this by written verification provided by the Pender County Floodplain Administrator and the Pender County Planning and Community Development Director. *Id.* ¶ 17.

Defendants instituted foreclosure proceedings against the Plaintiffs and have refused to acknowledge that the subject property was, at all relevant times, located in a designated flood zone requiring insurance. *Id.* ¶¶ 18-19, 21-22. Defendants have "used unconscionable means to try to extort financial information and payments from [Plaintiffs]; [ ] continued to refer [Plaintiffs] to many various employees, none of whom had any authority nor insight to address the issues; [ ] failed and refused to provide documents from the closing; [ ] never provided any accurate 'SFHD', particularly the one that they allege was obtained in 2013; has force placed [sic] flood and casualty insurance on a home that is valueless; has instituted the vindictive foreclosure proceedings but denied having done so; has refused to refer the matter to an Attorney or any person with authority; and has destroyed [Plaintiffs'] credit." *Id.* ¶ 22.

Plaintiffs filed suit in Pender County Superior Court on October 7, 2020, alleging three causes of action against Defendants arising under North Carolina state law: negligence, negligent misrepresentation, and a violation of N.C. Gen. Stat. § 75-1.1, Unfair and Deceptive Acts and

---

by BOA that flood insurance was no longer required. Ex. B, Compl. ¶¶ 14, 16, *Pike v. Bank of Am.*, No. 20-CV-000821 (Pender Cnty. Superior Ct. 2020); *see Hannigan v. United States*, 131 F. Supp. 3d 480, 486-87 (E.D.N.C. 2015) (indicating that a district court may take judicial notice of public records without converting a motion to dismiss for failure to state a claim into a motion for summary judgment).

Practices. *Id.* at 4, 7-9.[2] Defendants timely removed the case to federal court pursuant to diversity jurisdiction. Notice of Removal ¶¶ 5-11, DE-1. After being granted an extension of time to answer or otherwise respond to Plaintiffs' Complaint, see DE-6, Defendants filed the instant motion to dismiss for failure to state a claim on December 16, 2020 [DE-13]. Plaintiffs responded in opposition on January 22, 2021 [DE-24], after they too sought and received an extension of time, see DE-20 and DE-21. Defendants replied on February 3, 2021 [DE-30]. Plaintiffs thereafter filed a surreply [DE-33], without first seeking leave of the court to do so. Defendants then filed a motion to strike the surreply [DE-35] and Plaintiffs responded in opposition [DE-37].

II.     Motion to Strike Plaintiffs' Surreply

In the first instance, pursuant to the Local Civil Rules of Practice and Procedure in the United States District Court for the Eastern District of North Carolina, "[r]eplies to responses are discouraged." Local Civil Rule 7.1(g)(1). Sur-replies are not mentioned in the rule on motion practice, Local Civil Rule 7.1, and are only twice mentioned in the Local Civil Rules as a whole, both times referencing a "surreply memorandum (*where allowed*)," Local Civil Rule 7.2(f)(2)(C), 7.2(f)(3)(C) (emphasis added). However, "a judge or magistrate judge, for good cause and in his or her discretion, may alter these rules in any particular case." Local Civil Rule 1.1.

Pursuant to Federal Rule of Civil Procedure 12, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" by acting on its own or on a motion made by a party. Fed. R. Civ. P. 12(f). District courts have considerable discretion in deciding Rule-12(f) motions to strike. *See United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 325 (4th Cir. 2018) ("Although the striking of a pleading can be a tough remedy, the district court did not abuse its discretion by granting the government's motion."); *see*

---

[2] Page references are to the page numbers assigned by the CM/ECF electronic docketing system.

3

*also* Charles Alan Wright & Arthur R. Miller, 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed. 2021) ("The district court possesses considerable discretion in disposing of a Rule 12(f) motion to strike redundant, impertinent, immaterial, or scandalous matter.").

Here, Plaintiffs did not move the court for leave to file a surreply and instead filed it directly on the docket [DE-33]. As such, Plaintiffs failed to demonstrate good cause for altering the Local Civil Rules in this particular case. Therefore, the court, in its discretion, GRANTS Defendants' Motion to Strike Plaintiffs' Surreply [DE-35]. Docket Entry 33 will not be considered in the court's determination of the Motion to Dismiss.

III. Motion to Dismiss Legal Standard

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted," a court must determine whether the complaint is legally and factually sufficient. Fed. R. Civ. P. 12(b)(6); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

In doing so, the court must accept all well-pled allegations in the complaint as true and must construe all factual allegations in the light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, a court need not accept a complaint's legal conclusions, elements of a cause of action, and conclusory statements. *Iqbal*, 556 U.S. at 678; *see also Giarratano*, 521 F.3d at 302. Nor must a court accept as true "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

4

IV. Statute of Limitations Affirmative Defense at the Motion to Dismiss Stage

As a general rule, "a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, *see* Fed. R. Civ. P. 8(c), and the burden of establishing the affirmative defense rests on the defendant." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). A defendant's statute of limitations affirmative defense can be raised in a Rule 12(b)(6) motion to dismiss; however, it is seldom appropriate to do so. *See Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) ("A motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses."). Accordingly, a statute of limitations defense must "clearly appear[ ] on the face of the complaint." *Id.* In other words, the complaint must clearly allege "all facts necessary to the affirmative defense." *Goodman*, 494 F.3d at 464.

V. Discussion

As a federal court sitting in diversity, the court will apply North Carolina substantive law when assessing Plaintiffs' claims. *Castillo v. Emergency Med. Assocs., P.A.*, 372 F.3d 643, 646 (4th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

A. Negligence

"To state a claim for negligence under North Carolina law, a plaintiff must sufficiently allege the existence of a legal duty, breach of that duty, proximate causation, and damages." *Farmer v. Eagle Sys. & Servs., Inc.*, No. 5:14–CV–403, 2015 WL 134019, at *6 (E.D.N.C. Jan. 9, 2015) (citing *Little v. Omega Meats I, Inc.*, 171 N.C. App. 583, 586, 615 S.E.2d 45, 48 (2005)). A claim for negligence must be made within three years of "the wrong giving rise to the right to bring suit is committed, even though the damages at that time be nominal and the injuries cannot be discovered until a later date." *Birtha v. Stonemor, North Carolina, LLC*, 220 N.C. App. 286, 292,

5

727 S.E.2d 1, 7 (2012) (citation omitted); *see also* N.C. Gen. Stat. § 1-52(5). The negligent act Plaintiffs complain of occurred when they underwent their mortgage loan transaction with Wells Fargo's predecessor bank in November 2007. DE-1-1 ¶¶ 8-10, 23-27. Because suit was filed in September 2020, nearly thirteen years after the alleged wrong, Plaintiffs' negligence claim is time-barred and therefore must be dismissed without reaching the merits.

B. Negligent Misrepresentation

"The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Rountree v. Chowan Cnty.*, 252 N.C. App. 155, 158-59, 796 S.E.2d 827, 830 (2017) (citations omitted). "If the plaintiff could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence." *Cummings v. Carroll*, 270 N.C. App. 204, 221, 841 S.E.2d 555, 568, *review allowed*, 376 N.C. 525, 851 S.E.2d 42 (2020) (citation omitted). During the course of an ordinary debtor-creditor relationship, the duties a lender owes to the creditor are confined to the terms of the loan agreement. *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 368 N.C. 440, 449, 781 S.E.2d 1, 8 (2015). However such a relationship can give rise to a fiduciary duty under certain circumstances, for example if "one reposes a special confidence in another, and the other in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Id.* (citations omitted).

The element of justifiable reliance is demonstrated by alleging that a plaintiff made a reasonable inquiry into the representations at issue, or that he was denied the opportunity to investigate, or that he could not have learned of the true facts through reasonable diligence. *Rountree*, 252 N.C. App. at 162, 796 S.E.2d at 832; *see Dallaire v. Bank of Am., N.A.*, 367 N.C.

6

363, 369-70, 760 S.E.2d 263, 268 (2014) (acknowledging that determining the effects of a previous bankruptcy on a home's liens is complicated yet concluding that plaintiffs failed to demonstrate justified reliance necessary to support their negligent misrepresentation claim because there was no indication the couple made pertinent inquiries or sought outside advice about the liens in 2007 as, for example, they did in 2010 when preparing to sell their home, and because they failed to offer evidence that defendant denied them the opportunity to investigate the loan officer's initial assertions); *see also Cordaro v. Harrington Bank, FSB*, 260 N.C. App. 26, 36-37, 817 S.E.2d 247, 255 (2018) ("In short, the allegations in his complaint fail to show that he either engaged in any type of independent inquiry as to the validity of the appraisal value or that he was in any way prevented from doing so. . . . [This defect of failing to demonstrate justifiable reliance] bars his negligent misrepresentation claim."); *but see Cummings*, 270 N.C. App. at 221-24, 841 S.E.3d at 568-70 (finding that a complaint that alleged that a painter was hired to conceal water-intrusion issues in a home was effectively an allegation that plaintiffs could not have learned of the water-intrusion issues through the exercise of reasonable diligence); *Songwooyarn Trading Co. v. Sox Eleven, Inc.*, 213 N.C. App. 49, 54-56, 714 S.E.2d 162, 166-67 (2011) (finding that plaintiff could not discover a misrepresentation as the only person he could communicate with who had the information needed was also the party making the misrepresentation). "Whether a party's reliance is justified is generally a question for the jury, except in instances in which 'the facts are so clear as to permit only one conclusion.'" *Dallaire*, 367 N.C. at 369, 760 S.E.2d at 267 (quoting *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 225, 513 S.E.2d 320, 327 (1999)).

Moreover, "[a] plaintiff is not barred from recovery because he had a lesser opportunity to investigate representations made by someone with superior knowledge." *Songwooyarn*, 213 N.C. App. at 55, 714 S.E.2d at 166 (2011) (citation omitted).

> "[A] man is not expected to deal with another as if he is a knave, and certainly not unless there is something to excite his suspicion." Where the parties are not on equal footing, and the defendant who possesses superior knowledge and/or experience makes a representation "containing nothing so improbable or unreasonable as to put the other party upon further inquiry or give him cause to suspect that it is false, and an investigation would be necessary for him to discover the truth, the statement may be relied on." If, in such an instance, the plaintiff who relies on the false or misleading representation is injured, the defendant "will not be heard to say that he is a person unworthy of belief and that plaintiff ought not to have trusted him, or that plaintiff was negligent and was cheated through his own credulity."

*Walker v. Town of Stoneville*, 211 N.C. App. 24, 34, 712 S.E.2d 239, 246 (2011) (citations omitted). While a purchaser of land is considered to be on equal footing with the seller of land, see *Libby Hill Seafood Rests., Inc. v. Owens*, 62 N.C. App. 695, 699-700, 303 S.E.2d 565, 569 (1983), it is not apparent to the court that the same can be said of the debtor-creditor relationship.

In light of this case's posture, where the court accepts as true all factual allegations but need not accept legal conclusions, the court will assume without deciding that Plaintiffs' interaction with Defendants prior to signing the loan gave rise to a fiduciary relationship, which consequently created a legal duty. DE-1-1 ¶¶ 10-12 (alleging Defendants' assurances to Plaintiffs that as part of the loan-closing process Defendants would obtain an accurate determination of whether the home was in a flood plain), 29, 34 (citing to the North Carolina Mortgage Lending Act, N.C. Gen. Stat. § 53-243, in effect at the time the loan was procured but later repealed in 2009); *see also Guyton v. FM Lending Servs., Inc.*, 199 N.C. App. 30, 42-43, 681 S.E.2d 465, 475 (2009) (concluding that despite the fact that a provision of the Mortgage Lending Act did not directly address the specific set of factual circumstances present in the case—namely, that defendant actively and intentionally withheld information that the property lay in a flood plain, including the retention of surveys and certifications that contained relevant information and the affirmative obstruction of Plaintiffs' access to important information, in order to induce Plaintiffs to purchase the property—the provision was intended to protect buyers against the sort of activity

8

that was alleged to have occurred and therefore gave rise to a legal duty). Plaintiffs adequately allege that the information provided by Defendants was false and prepared without reasonable care, *id.* ¶¶ 30-31, and that the information was relied upon to their detriment, *id.* ¶¶ 32-33.

Based on the allegations in the Complaint, the court is not convinced that there is only one conclusion regarding whether the Plaintiffs' reliance was justified. On one hand, Plaintiffs make no explicit reference to any attempts to undertake an independent investigation into the home's flood-zone status themselves (as they did in the aftermath of Hurricane Florence [3]), that they were denied the opportunity to do so, or that there would have been no way to learn of the true flood-zone status of their home at the time had they exercised reasonable diligence. This leads to the conclusion that Plaintiffs' reliance was not justified.[4] On the other hand, Defendants had superior knowledge, promised to obtain an accurate "SFHD," see DE-1-1 ¶ 10—as was their legal duty, see *id.* ¶ 12—and knew that Plaintiffs would be relying on this advice. A plausible implication from this is that the promise caused Plaintiffs to forego an independent investigation into the flood-zone status of their home, which is effectively an allegation that Plaintiffs were denied the opportunity to do so. This leads to the opposing conclusion that Plaintiffs' reliance was justified. Because there is more than one plausible conclusion on the element of justified reliance, the court cannot hold as a matter of law that Plaintiffs have failed to state a claim for negligent misrepresentation. Dismissal at this stage is not appropriate.

---

[3] Prior to obtaining a loan from Defendants, Plaintiffs obtained two loans from BOA and maintained flood insurance on the home from approximately 2005 to 2008 because they ostensibly knew their home was in a flood zone based on BOA's representations. *See supra* note 1. Plaintiffs did undertake an independent investigation of the home's flood-zone status in the aftermath of Hurricane Florence. DE-1-1 ¶ 16.

[4] Though not raised by Defendants in the instant motion to dismiss, the court notes for the record that this claim also appears subject to dismissal pursuant to the applicable statute of limitations. *See Carlisle v. Keith*, 169 N.C. App. 674, 684, 614 S.E.2d 542, 549 (2005) ("The statute of limitations for negligent misrepresentation is three years pursuant to N.C. Gen. Stat. § 1–52.") (citations omitted).

9

### C. North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA")

To state a claim for unfair or deceptive trade practices under North Carolina law a plaintiff must allege facts sufficient to demonstrate an unfair or deceptive act or practice, or unfair method of competition, by the defendant, in or affecting commerce, which proximately caused injury to the plaintiff or his business. N.C. Gen. Stat. §§ 75-1.1, 75-16; *Heron Bay Acquisition, LLC v. United Metal Finishing, Inc.*, 245 N.C. App. 378, 382, 781 S.E.2d 889, 892 (2016) (citation omitted). An act is unfair "when it offends established public policy, . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," or "amounts to an inequitable assertion of . . . power or position." *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 172, 684 S.E.2d 41, 50 (2009) (quotation, citations, and emphasis omitted); *see also In re Rutledge*, 510 B.R. 491, 509 (M.D.N.C. 2014) (finding that Chapter 13 debtor's allegations against mortgage loan servicer that servicer miscommunicated with debtor, servicer's personnel were confused with regard to the application of insurance proceeds to the debt, and servicer supplied erroneous information to debtor did not rise to the level of "unfair" acts or constitute egregious or aggravating circumstances as required to state a claim against servicer for a violation of North Carolina's unfair and deceptive trade practice statute).

An act is deceitful if "a party's words or conduct [has] the tendency or capacity to mislead." *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 254, 507 S.E.2d 56, 64 (1998) (quotations and citation omitted).

> In the context of a misrepresentation claim brought under section 75–1.1, actual reliance requires that the plaintiff have affirmatively incorporated the alleged misrepresentation into his or her decision-making process: if it were not for the misrepresentation, the plaintiff would likely have avoided the injury altogether. The second element, reasonableness, is most succinctly defined in the negative: "Reliance is not reasonable where the plaintiff could have discovered the truth of the matter through reasonable diligence, but failed to investigate."

10

*Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 90, 747 S.E.2d 220, 227 (2013) (citations omitted). Thus, a misrepresentation about facts or circumstances forming the basis of a bargain between parties can constitute unfair or deceptive acts or practices in commerce. *See Hardy v. Toler*, 288 N.C. 303, 310-11, 218 S.E.2d 342, 346-47 (1975) (holding as a matter of law that defendant-salesman's knowing misrepresentations that a used automobile was a one-owner vehicle, that the remaining portion of the original manufacturer's new-car warranty could be transferred to plaintiff upon the payment of a fee, and that the automobile had not been involved in a wreck constituted unfair or deceptive practices); *but see Cordaro*, 260 N.C. App. at 39-40, 817 S.E.2d at 257 (determining that a plaintiff who failed to sufficiently allege reasonable reliance on a construction appraisal, which turned out to be inaccurate, failed to state a claim for unfair or deceptive trade practices).

"Whether an act or practice is unfair or deceptive under the UDTPA is a question of law for the court." *Kelly v. Georgia–Pacific, LLC*, 671 F.Supp.2d 785, 799 (E.D.N.C. 2009) (collecting cases). "[S]ome type of egregious or aggravating circumstances must be alleged" to make out a UDTPA claim. *Dalton v. Camp*, 353 N.C. 647, 657, 548 S.E.2d 704, 711 (quotation, citations, and emphasis omitted); *see also Rogers v. Keefer, Inc.*, 243 F. Supp. 3d 650, 660-61 (E.D.N.C. 2017) (concluding that plaintiff failed to state a claim under the UDTPA for a car dealership's alleged negligence in overlooking numerous inconsistencies in verifying the identity thief's loan application). Apart from claims stemming from alleged fraudulent conduct, an alleged violation of the UDTPA "shall be barred unless commenced within four years after the cause of action accrues." N.C. Gen. Stat. § 75-16.2; *see also Dreamstreet Invs., Inc. v. MidCountry Bank*, 842 F.3d 825, 830 (4th Cir. 2016).

11

As alleged in the Complaint, the acts complained of in the UDTPA context include the Defendants' "failure to genuinely respond to repeated requests for documentation, and their constant and repeated failure to identi[f]y a representative with authority to negotiate, and their deception regarding their errors, were not acting in good faith and/or fair dealing." DE-1-1 ¶ 36. Though the acts stem from Plaintiffs' efforts to glean information about the flood-zone status of their home at the time they secured a loan from Defendants in 2007, the acts themselves took place in the months and years after September 2018 (Hurricane Florence), see *id.* ¶¶ 18-19, 22, 36. Thus, the Defendants' statute-of-limitations defense is not "clearly app[arent] on the face of the complaint," *Richmond*, 4 F.3d at 250, and the claim cannot be dismissed for this reason. However, the UDTPA claim will be dismissed because Plaintiffs have failed to allege facts sufficient to demonstrate egregious or aggravating circumstances. Instead, the alleged unfair acts amount to poor customer service. Poor customer service, as frustrating as it can be, does not offend established public policy. In addition, the current, alleged "deception" is vague and conclusory. Based on the allegations as pled, the court cannot determine if the complained-of act had the tendency or capacity to mislead or created the likelihood of deception. The Plaintiffs' UDTPA claim will therefore be dismissed.

VI. Conclusion

For the foregoing reasons, Defendants' Motion to Strike Plaintiffs' Surreply [DE-35] is GRANTED. Defendants' Motion to Dismiss [DE-13] is GRANTED IN PART AND DENIED IN PART. Two causes of action in the Complaint, as alleged, fail to state a claim upon which relief may be granted (count one and count three). This leaves one claim intact, count two: negligent misrepresentation. The case will proceed on this claim.

SO ORDERED this the 15th day of June, 2021.

*Richard E Myers II*

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE